William **POLILLO**, Cecilia Polillo, and Richard Reno, Plaintiffs,

v.

**PROTEL, INC.,** a Florida corporation, Defendant.

No. 97 C 4867.

United States District Court, N.D. Illinois, Eastern Division.

March 27, 1998.

---

Lee F. Grossman, Mark M. Grossman, Grossman & Grossman, Ltd., Chicago, IL, for Plaintiffs.

David C. Brezina, James R. Sweeney, Timothy James Engling, Lee, Mann, Smith, McWilliams, Sweeney & Ohlson, Chicago, IL, Brian R. Gilchrist, Allen, Dyer, Doppelt, Milbrath & Gilchrist. P.A., Orlando, FL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

Patent No. 4,208,549, hereafter known as the "Polillo" patent, describes "a coin surveillance apparatus that will monitor the amount of money deposited in a pay telephone, vend-

ing machine or the like." Polillo Abstract. This apparatus is composed of "two basic units, the first being a monitoring unit positioned within the phone or machine ...; the second unit being a polling and display unit for receiving information from the first unit...." *Id.* The plaintiffs designed this apparatus to "optimiz[e] the pickup of money from coin boxes [so as to] reduce labor, increase profits and reduce the danger of theft from the collector." Polillo, Col. 1, lines 27–29.

The plaintiffs sued defendant Protel, Inc. in 1997, alleging that Protel's pay telephone monitoring system infringes the Polillo patent. Protel has moved for summary judgment of noninfringement.

■ Many patents, like the one in this case, describe in their claims a device or system which is composed of not one discrete invention but rather of a number of components, known as elements, which comprise the patented whole. The Polillo patent's claims describe a vending machine monitoring system, the elements of which include a "receptacle collection counter," a "receptacle time-out second counter," and other "registers" which collect information about the machine's operation. *Id.* at Col. 8, lines 49–51. These elements are at the core of our analysis, for a finding of infringement requires that *every* element in the claim (or its equivalent, as we discuss in Part B., *infra*) appear in Protel's accused device. *See Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 117 S.Ct. 1040, 1049, 137 L.Ed.2d 146 (1997). Conversely, if it is clear that any elements (or their equivalents) are not found within the accused device, summary judgment for the defendant is appropriate. *See id.* at 1053 n. 8.

## A. Literal Infringement

■ The first step of the literal infringement analysis requires that we construe the patent's claims, which serves to define in clear terms the scope of the patent's coverage. *See Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 1387, 134 L.Ed.2d 577 (1996); *Lockwood v. American Airlines, Inc.,* 107 F.3d 1565, 1573 (Fed.Cir.1997). Our primary focus is on the

language of the claims, though we may also consult the patent specifications, the prosecution history, and, if necessary, extrinsic evidence which does not contradict the express provisions of the patent. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582–83 (Fed.Cir.1996).

We need go no further than the language of the Polillo patent's claims in order to construe the element which serves as the sole focus of this opinion, the receptacle collection counter. The first claim (the only independent claim) describes, *inter alia,* a "monitoring unit ... having a non-volatile memory and located with and coupled to" a vending machine, and it states that this monitoring unit "has a register bank containing ... a receptacle collection counter." Polillo, Col. 8, lines 36–49. The seventh claim (a dependent claim) states that this counter "counts the number of times the coin box of the coin machine is removed from the machine," *id.* at Col. 9, lines 26–28, and the seventeenth claim (another dependent claim) further states that "the coin box register increases by one" for "each time the coin box is removed from the pay phone," *id.* at Col. 10, lines 45–46. The first claim also describes a "polling and display unit" capable of "interrogat[ing] each ... monitoring unit[ ]" to collect this information. *Id.* at Col. 8, lines 41–44. From all of this it is clear that the Polillo patent describes a vending machine monitoring system in which (1) a device located inside each vending machine counts and stores the total number of times that the collector has removed the coin box from the machine; and (2) a central computer may, at its user's request, collect the accumulated information from the device.

The second step in the literal infringement analysis involves determining whether the accused device literally infringes on the claim, as now clarified. *See Lockwood,* 107 F.3d at 1573. This is a question of fact which we may resolve only if, as is the case here, no reasonable jury could differ with our view. *See id.* at 1569, 1573, Protel's pay telephones do not contain a device which tallies and remembers the total number of coin box removals and which sends that information to the central computer only on

that computer's periodic request. Protel's phones are instead merely capable of sending a single signal to a central computer each time a coin box has been removed. No reasonable jury could conclude that this constitutes a literal infringement of the Polillo patent's claims, which clearly require that a device *inside* each machine *tally* and *store* the number of coin box removals and report that information only on the central computer's request.

### B. The Doctrine of Equivalents and Prosecution History Estoppel

Of course, even if Protel's pay telephones do not literally contain each element of the Polillo patent's claims, Protel is still liable if its monitoring system contains the substantial equivalent of every element. This is the familiar doctrine of equivalents, the validity and vitality of which the Supreme Court reaffirmed just last year. *See Warner–Jenkinson,* 117 S.Ct. at 1045.

 The doctrine does not operate, however, where the patent holder amended the claims during prosecution "to avoid the prior art, or otherwise to address a specific concern—such as obviousness—that arguably would have rendered the claimed subject matter unpatentable." *Id.* at 1049. This "well established limit on non-literal infringement" is known as "prosecution history estoppel" or "file wrapper estoppel." *Id.* And while application of the doctrine of equivalents to the accused device appears to be a question of fact to be decided by the jury, *see, e.g., Hilton Davis Chemical Co. v. Warner–Jenkinson Co., Inc.,* 62 F.3d 1512, 1520–21 (Fed.Cir.1995) (so holding); *see also Warner–Jenkinson,* 117 S.Ct. at 1053 (noting that "there was ample support in our prior cases for that holding" but reserving judgment on the question), "legal limitations on the application of the doctrine" such as prosecution history estoppel can justify "complete judgment ... by the court, as there would be no further material issue for the jury to resolve." *Warner–Jenkinson,* 117 S.Ct. at 1053 n. 8; *see also Hoganas AB v. Dresser Indus., Inc.,* 9 F.3d 948, 952 (Fed.Cir.1993) ("prosecution history estoppel is a question of law").

We believe that prosecution history estoppel bars the plaintiffs from claiming substantial equivalence as to the receptacle collection counter element. In the original patent application, claim one did not explicitly mention that element, claim seven stated that the "register bank has a storage register to count the number of times the coin box of the coin machine is removed from the machine," and claim seventeen (then numbered claim eighteen) appeared in its present form. The examiner rejected each of the proposed Polillo claims, stating that claims four through eighteen were obvious in light of Patent 4,124,775, also known as the "Zarouni" patent. Examiner's Report p. 2 (citing 35 U.S.C. § 103). The Zarouni patent's first claim describes "[a] coin box removal information processing arrangement for a coin telephone station" which contains "circuitry responsive to a removal of said coin box" and an "apparatus responsive to an interrogation signal from the central office during a call from said station." Zarouni, Col. 10, lines 1–19. In plain English, this means that a Zarouni pay telephone notifies the central office at the conclusion of the next telephone call which follows the removal of the coin box. A Zarouni pay telephone does not remember the total number of removals.

The Polillo applicants amended their claims, adding to count one the language stating that the monitoring unit contained the receptacle collection counter and changing count seven to its present form. In addition, the Polillo applicants made the following remarks to accompany their proposed amendments:

Zarouni "775" describes a coin box removal arrangement ... [in which] [t]he receptacle (coin box) collect bit is set when the collector removes the receptacle from the telephone. There is no teaching or suggestion of a system where the number of times the receptacle is removed is *recorded.* ... Applicants do not use Zarouni's "775" approach since it is error-prone and does not, as does applicants' device, *record the ... number of collections.* Applicants *do not set a collect "bit" and transfer information to the central office equipment at the conclusion of every call.* ... [A]pplicants *store and transmit the actual*

*number recorded at the remote location,* whereas Zarouni stores and transmits "bits" (i.e., 0 or 1).... Zarouni "775" upon transmitting the coin box removal bit at the completion of the next call placed after the collection, the system resets the "flag" in the instrument to zero. Whereas, applicants do not reset any kind of a coin box removal "flag" but *continue to carry the numbers in the in-set registers as a security measure....* The present response is directed to facts which emphasize the unobviousness of applicants' devices.

Applicants' Remarks pp. 5–8 (emphasis added); *see generally Hoganas,* 9 F.3d at 952 (considering, for prosecution history estoppel purposes, arguments made to the examiner).

To sum up, the prosecution history shows that the examiner determined that claims seven and seventeen (originally eighteen) of the original Polillo application were obvious in light of the Zarouni patent. In response to this, the Polillo applicants amended their claims to clarify the nature and operation of the counting mechanism and submitted remarks designed to distinguish their mechanism from Zarouni's on three grounds: (1) on-site tallying and (2) retention of the total number of coin box removals which (3) is transferred to the central office only after periodic interrogations from that office.

Having amended their claims and explained those amendments so as to distinguish their counting mechanism from Zarouni's, the plaintiffs are estopped from using the doctrine of substantial equivalents to recapture Zarouni's coverage. *See Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 934 n. 1 (Fed.Cir.1987). Since Protel's counting mechanism does not meaningfully differ from Zarouni's, we conclude that the Polillo applicants are estopped from complaining about the Protel counting mechanism without regard to whether it might otherwise be considered substantially equivalent to their own.[1]

### C. *Conclusion*

We conclude that the plaintiffs cannot establish that each element of the Polillo patent's claims appear within Protel's accused device, and we accordingly grant Protel's motion for summary judgment. It is so ordered.

---

1. The plaintiffs bear the burden of "establish[ing] the reason for an amendment required during prosecution," and we presume, in the absence of a satisfactory explanation, that there was "a substantial reason related to patentability for including the limiting element added by amendment," in which case "prosecution history estoppel ... bar[s] the application of the doctrine of equivalents as to that element." *Warner–Jenkinson,* 117 S.Ct. at 1051. The only explanation relevant to this element which the plaintiffs now offer is that "[t]he reason for the amendment was clear: ... (3) [Zarouni's] signal that the coin-box had been removed was sent *after* the completion of the next call after the collection, which could be eight months later [in the case of seasonal phones]." Pls.' Br. at 10 (emphasis original). If this was their goal in amending, however, the Polillo applicants could simply have provided for the mechanism now found in some of Protel's phones, which sends an immediate signal to the central office following the coin box removal. But since the examiner could easily have found that arrangement to be obvious in light of Zarouni, the Polillo applicants did much more to distinguish their counting mechanism. Their efforts served to distinguish Protel's mechanism as well.