**ROY–G–BIV CORPORATION,**
**Plaintiff,**

**v.**

**ABB, LTD., et al., Defendants.**

**Case No. 6:11–cv–622**

United States District Court,
E.D. Texas, Tyler Division.

Signed August 8, 2014

Darrell Glyn Dotson, The Dotson Law Firm, Scott English Stevens, Todd Y. Brandt, Stevens Henry, PLLC, Longview, TX, David Michael Underhill, Richard S. Meyer, Patrick Michael Lafferty, Boies, Schiller & Flexner LLP, Washington, DC, Douglas Ron Wilson, Heim, Payne & Chorush, LLP, Austin, TX, Gregory Phillip Love, Love Law Firm P.C., Henderson, TX, Michael E. Jones, Potter Minton, A Professional Corporation, Tyler, TX, Russell Allen Chorush, Heim, Payne & Chorush, LLP, Adam Quentin Voyles Lubel Voyles, LLP, Houston, TX, for Plaintiff.

Steven M. Auvil, Bryan Joseph Jaketic, James S. Alex, John James Ross Thuermer, Squire Sanders & Dempsey, Cleveland, OH, Jeremy William Dutra, Squire Sanders (US) LLP, Washington, DC, Allen Franklin Gardner, Daniel Alan Noteware, Jr., John Frederick Bufe, Michael E. Jones, Patrick Colbert Clutter, IV, Potter Minton, A Professional Corporation, Tyler, TX, Jeffrey M. Young, ABB Inc., Raleigh, NC, Paul R. Katterle, Robert P. Nupp, ABB Inc., Wickliffe, OH, Nicholas B. Clifford, J.R., Armstrong Teasdale LLP, St Louis, MO, for Defendants.

## *ORDER*

LEONARD DAVIS, UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff ROY–G–BIV Corporation's ("ROY–G–BIV") Motion for Partial Summary Judgment of No Inequitable Conduct (Docket No. 362); ROY–G–BIV's Motion for Partial Summary Judgment Regarding ABB's OPC–Related Affirmative Defenses and Counterclaims (Docket No. 366); Defendants ABB Inc. ("ABB"), Meadwestvaco Texas, LP, and Meadwestvaco Corporation's Motion to Dismiss Their OPC–Related Affirmative Defenses and Counterclaims (Docket No. 425); Defendants' Motion for Summary Judgment of Invalidity due to Lack of Written Description (Docket No. 363); ROY–G–BIV's Motion to Exclude the Expert Testimony of Arthur Zatarain (Docket No. 361); and Defendants' Motion to Strike Portions of George Huntington's Expert Report (Docket No. 365). The Court heard arguments regarding these motions on July 24, 2014.

As stated at the hearing, and for the reasons given below, ROY–G–BIV's Motion for Partial Summary Judgment of No Inequitable Conduct (Docket No. 362) is **GRANTED IN PART** and **DENIED IN PART AS MOOT**; ROY–G–BIV's Motion for Partial Summary Judgment Regarding ABB's OPC–Related Affirmative Defenses and Counterclaims (Docket No. 366) is **GRANTED**; Defendants' Motion to Dismiss Their OPC–Related Affirmative Defenses and Counterclaims (Docket No. 425) is **DENIED AS MOOT**; Defendants' Motion for Summary Judgment of Invalidity due to Lack of Written Description (Dock-

et No. 363) is **DENIED**; ROY–G–BIV's Motion to Exclude the Expert Testimony of Arthur Zatarain (Docket No. 361) is **DENIED**; and Defendants' Motion to Strike Portions of George Huntington's Expert Report (Docket No. 365) is **DENIED**.

## BACKGROUND

ROY–G–BIV Corporation filed this lawsuit on November 15, 2011, and accuses the Defendants of infringing U.S. Patent Nos. 6,513,058 ("the '058 Patent"); 6,516,236 ("the '236 Patent"); and 8,073,557 ("the '557 Patent"). All three patents are directed to software systems that control industrial automation equipment. The accused products are ABB's System 800xA, Compact HMI 800 system, and related hardware components.

## *ROY–G–BIV'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT*

ABB's Second Amended Answer, Affirmative Defenses, and Counterclaims raised both an affirmative defense and counterclaim based on alleged inequitable conduct committed during the prosecution of the patents-in-suit. Docket No. 245 at 9, 50. ROY–G–BIV moved for partial summary judgment based on the four inequitable conduct theories raised by Defendants. At the hearing, the parties jointly moved to dismiss with prejudice three of ABB's inequitable conduct theories, including failure to disclose Motion Toolbox and Motion Architect related references, failure to disclose WinSEM documents, and failure to disclose or misrepresentation of Windows Open System Architecture references. 07/24/2014 Hearing Tr. at 3:9–4:19. The Court **GRANTED** the Motion and those theories were **DISMISSED WITH PREJUDICE**. ABB's remaining theory relates to ROY–G–BIV's alleged omission of Com-

pumotor employee Marc McClung as a co-inventor.

## APPLICABLE LAW

■ "Inequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed.Cir. 1988); *see also Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1313 (Fed.Cir.2008). Intent and materiality are separate requirements. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed.Cir.2011) (en banc); *Hoffmann–La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1359 (Fed.Cir.2003). But for materiality is required to establish inequitable conduct:

> This court holds that, as a general matter, the materiality required to establish inequitable conduct is but-for materiality. When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art. Hence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference. In making this patentability determination, the court should apply the preponderance of the evidence standard and give claims their broadest reasonable construction.

*Therasense*, 649 F.3d at 1291–92. Because an actual "intent to deceive" is required, evidence that the applicant knew of a reference and decided not to submit it to the PTO does not prove specific intent to deceive. *See Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366

(Fed.Cir.2008) ("the fact that information later found material was not disclosed cannot, by itself, satisfy the deceptive intent element of inequitable conduct"). Intent may be shown from indirect and circumstantial evidence. *Therasense*, 649 F.3d at 1290. When examining intent, the alleged conduct must be "viewed in light of all the evidence, including evidence indicative of good faith." *Kingsdown*, 863 F.2d at 876.

## ANALYSIS

■ ROY–G–BIV argues that the failure to include Mr. McClung as an inventor was not material because Mr. McClung was not, in fact, a co-inventor of the patented technology. Docket No. 362 at 5. ROY–G–BIV contends the claimed invention was already conceived of and documented in ROY–G–BIV's XMC software specification by April 12, 1994, before the named inventors, ROY–G–BIV founders David Brown and Jay Clark, began substantive discussions with Compumotor and Mr. McClung. *Id.* Further, ROY–G–BIV asserts that the "code generation mode" concept added by Mr. McClung was well known in the art at the time the suggestion was made, as Mr. McClung himself has testified. *Id.* at 5–7. Additionally, ROY–G–BIV cites Mr. McClung's deposition as evidence that Mr. McClung did not and does not consider himself an inventor of the ROY–G–BIV patents. *Id.* at 6. Concerning intent to deceive, ROY–G–BIV argues ABB has offered no evidence demonstrating that ROY–G–BIV had such intent and contends that the evidence supports many other plausible inferences. *Id.* at 13–14. Further supporting this claim, ROY–G–BIV asserts that during prosecution it provided the PTO documents describing ROY–G–BIV's relationship with Compumotor. *Id.* at 14.

ABB argues that Mr. McClung's contributions to the technology were critical and that the interface developed by Mr. McClung is the only point of novelty in the invention. Docket No. 390 at 7. Further, ABB contends that the "code generation mode" was not included in the first draft of the software specification, but was only added after extensive work with Compu-Motor and Mr. McClung in April 1994. *Id.* at 8. Concerning intent, ABB posits that ROY–G–BIV's failure to name Mr. McClung as a co-inventor is "the single most reasonable inference able to be drawn" because there are no facts to support any alternative view. *Id.* at 10.

Here, significant questions of material fact remain concerning materiality. Viewing the evidence in a light most favorable to ABB, the significance of Mr. McClung's contributions to the technology is unclear. However, ABB has failed to provide clear and convincing evidence that ROY–G–BIV had intent to deceive the PTO during prosecution or that intent to deceive is "the single most reasonable inference" based on the evidence. *Therasense*, 649 F.3d at 1290. Mr. McClung himself testified that he was not an inventor of the ROY–G–BIV patents. Docket No. 362 at 6. ROY–G–BIV also provided evidence that it submitted documentation of its relationship with Mr. McClung and Compumotor to the PTO during prosecution. *Id.* at 14. This evidence provides for several reasonable inferences, all just as likely as the inference that ROY–G–BIV intentionally deceived the PTO. Because ABB has failed to provide sufficient evidence of intent to deceive, ROY–G–BIV's Motion for Partial Summary Judgment is **GRANTED** as to the Compumotor/McClung inventorship theory of inequitable conduct.

### *ROY–G–BIV'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING ABB'S OPC–RELATED AFFIRMATIVE DEFENSES AND COUNTERCLAIMS*

ABB's Second Amended Answer, Affirmative Defenses, and Counterclaims raised

affirmative defenses and counterclaims related to the OPC Foundation's intellectual property policies. Docket No. 245 at 9, 35–43. ROY–G–BIV moved for partial summary judgment regarding those defenses and counterclaims. Following briefing of the Motion, Defendants' withdrew their opposition to ROY–G–BIV's Motion. Docket No. 424. Accordingly, without reaching the merits of the issues raised, the Court **GRANTS** ROY–G–BIV's motion.

### DEFENDANTS' MOTION TO DISMISS OPC–RELATED AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Following Defendants' withdrawal of opposition to ROY–G–BIV's Motion for Partial Summary Judgment Regarding ABB's OPC–Related Affirmative Defenses and Counterclaims, ABB filed a Motion to Dismiss OPC–Related Affirmative Defenses and Counterclaims. In light of the Court's granting of ROY–G–BIV's Motion for Partial Summary Judgment, the Motion to Dismiss is **DENIED AS MOOT**.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,513,058 DUE TO A LACK OF WRITTEN DESCRIPTION

Defendants move for summary judgment that claims 2, 3, and 5 of the '058 Patent are invalid for failing to satisfy the written description requirement of 35 U.S.C. § 112, ¶ 1.

### APPLICABLE LAW

■ The written description requirement found in 35 U.S.C. § 112, ¶ 1 prevents an applicant from later asserting that he invented that which he did not. *Amgen Inc. v. Hoechst Marion Roussel,* 314 F.3d 1313, 1330 (Fed.Cir.2003). To "guard[ ] against the inventor's over-

reaching," the written description requirement "insist[s] that [the inventor] recount his invention in such detail that his future claims can be determined to be encompassed within his original creation." *Vas–Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1561 (Fed.Cir.1991). This means that all of the limitations must appear in the specification. *Lockwood v. Am. Airlines, Inc.,* 107 F.3d 1565, 1572 (Fed.Cir.1997). The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification. *Id.* Rather, the application itself must describe an invention and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought. *Id.*

■ Compliance with the written description requirement is assessed with respect to the application as filed, not the specification as issued. *See Ariad Pharms., Inc. v. Eli Lilly & Co.,* 598 F.3d 1336, 1351 (Fed.Cir.2010) (en banc). New claims or other added material must find support in the original specification. *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. GE,* 264 F.3d 1111, 1118 (Fed.Cir.2001). Thus, as a matter of law, the written description requirement cannot be met by new matter added during prosecution. *See Ariad,* 598 F.3d at 1336. Compliance with the written description requirement is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party. *PowerOasis, Inc. v. T–Mobile USA, Inc.,* 522 F.3d 1299, 1307 (Fed.Cir.2008).

### ANALYSIS

■ Here, Defendants contend that the '058 Patent asserted by ROY–G–BIV fails to meet the written description requirement because claims 2, 3, and 5 require at least two workstations but neither the pri-

ority documents nor the '058 specification disclose an embodiment including two workstations. Docket No. 363 at 1. Claims 2, 3, and 5 recite that "the application program runs on a first of the plurality of workstations" and that "the control command generating module operates on a second of the plurality of workstations." Defendants argue that the '058 Patent specification discloses a system with only a single personal computer, or workstation, that runs both the application program and the control command generating module. *Id.* at 2–4. Defendants also cite the report of their expert witness, Arthur Zatarain, in support of this view. *Id.* at 6.

ROY–G–BIV responds that the specification supports the claim requirements for two separate workstations due to the explicit disclosure of OLE network communications which allows different software elements on separate computer workstations to interact with each other. Docket No. 380 at 14–15. ROY–G–BIV cites its expert's report to support the view that a person of skill in the art would understand that the application program and control command generating module could operate on separate workstations based on the disclosure of OLE networking ability. *Id.* at 13–14.

Whether the OLE networking disclosures adequately describe a system that meets the limitations of the claims is a question of fact. That each party's expert comes to a different conclusion on this issue demonstrates that genuine issues of material fact remain that preclude summary judgment. *See Butamax Advanced Biofuels LLC v. Gevo, Inc.*, 746 F.3d 1302, 1316 (Fed.Cir.2014). Defendants have therefore failed to show by clear and convincing evidence that the '058 Patent specification would inadequately disclose to a person of ordinary skill in the art that the inventors actually invented the claimed subject matter. Accordingly, Defendants' Motion for Summary Judgment is **DENIED.**

### *ROY–G–BIV'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF ARTHUR ZATARAIN*

ABB served the report of its invalidity expert Arthur Zatarain, which expresses Mr. Zatarain's view that certain claims of ROY–G–BIV's asserted patents are invalid based on anticipation by three different prior art references. ROY–G–BIV moves to exclude these expert opinions of Mr. Zatarain because ROY–G–BIV argues that Mr. Zatarain uses the legally inadequate theory of "anticipation by equivalents."

### APPLICABLE LAW

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that "scientific, technical, or other specialized knowledge" may be admissible where such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue...." FED. R. EVID. 702. Such testimony is only admissible "if [1] the testimony is based upon sufficient facts or data, [2] the testimony is the product of reliable principles and methods, and [3] the expert has reliably applied the principles and methods to the facts of the case." *Id.*; *see also Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In applying these standards, district courts are charged to act as "gatekeepers" in order to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The primary concern of the "gatekeeper" function "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the court-

room the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). To that end, any step an expert takes in formulating his opinion "that renders the analysis unreliable ... renders the expert's testimony inadmissible." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir.1999).

## ANALYSIS

■ ROY–G–BIV claims that Mr. Zatarain improperly offers multiple opinions that various prior art references anticipate the asserted claims because they disclose features and functions that Mr. Zatarain opines are "equivalent to" claim limitations. Docket No. 361 at 2. These opinions, ROY–G–BIV contends, are legally incorrect and therefore irrelevant. *Id.* at 2. ROY–G–BIV further argues that Mr. Zatarain's report does not merely represent loose use of language because while Mr. Zatarain describes some prior art disclosures as "equivalent to" certain claim limitations, he describes other prior art disclosures as literally meeting claim limitations through the use of "is." *Id.* at 4. ABB responds that the issues raised by ROY–G–BIV here are merely semantics. Docket No. 376 at 3. ABB argues that while Mr. Zatarain uses the phrase "equivalent to," he clearly means that the prior art reference literally meets that limitation of the claim. *Id.* at 2–3. ABB contends that despite his choice of words, Mr. Zatarain understood the legal requirements of anticipation and that his report makes clear that each limitation of the asserted claims is literally met by an appropriate prior art reference. *Id.* at 2.

It is not disputed that "anticipation by equivalents" is a legally deficient argument, however, that is not at issue here. In this case, it appears Mr. Zatarain, who is not a lawyer, simply chose to use the phrase "equivalent to" when he intended to opine that a feature of a prior art reference literally met a limitation of the asserted claims. While this language may be legally inaccurate, the substantive opinions of Mr. Zatarain's report remains valid. Nevertheless, ABB is cautioned that it should not raise any "anticipation by equivalents" argument at trial. With that warning, ROY–G–BIV's Motion to Exclude is **DENIED**.

## *DEFENDANTS' MOTION TO STRIKE PORTIONS OF GEORGE HUNTINGTON'S EXPERT REPORT FOR EXCEEDING THE SCOPR OF ROY–G–BIV'S INFRINGEMENT CONTENTIONS*

ROY–G–BIV served its initial infringement contentions in September 2012 and has since served two sets amended infringement contentions and a set of supplemental infringement contentions. On March 28, 2014, ROY–G–BIV served the expert report of George Huntington, ROY–G–BIV's infringement expert. Defendants charge that Mr. Huntington's report improperly goes beyond the scope of ROY–G–BIV's infringement contentions and raises previously undisclosed infringement theories.

## APPLICABLE LAW

■ The Local Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F.Supp.2d 819, 822 (E.D.Tex.2007). Patent Rule 3–1 requires a party asserting infringement to serve infringement contentions on each defending party. A plaintiff must "set forth specific theories of infringement at the outset of the case." *Orion IP, LLC v.*

*Staples, Inc.,* 407 F.Supp.2d 815, 817 (E.D.Tex.2006). These "contentions must be reasonably precise and detailed ... to provide a defendant with adequate notice of the plaintiff's theories of infringement, [but] they need not meet the level of detail required, for example, on a motion for summary judgment on the issue of infringement." *Realtime Data, LLC v. Packeteer, Inc.,* No. 6:08–cv–144, 2009 WL 2590101, at *5 (E.D.Tex.2009). "Nevertheless, a party may not rely on vague, conclusory language" in its infringement contentions. *Global Sessions LP v. Travelocity.com LP,* No. 6:10–cv–671, 2012 WL 1903903, at *2 (E.D.Tex.2012).

 Expert infringement reports may not introduce theories not previously set forth in infringement contentions. *Cf. Anascape, Ltd. v. Microsoft Corp.,* No. 9:060cv0158, 2008 WL 7180756, *4 (E.D.Tex. May 1, 2008) (striking portions of expert report that exceeded scope of invalidity contentions); *Visto Corp. v. Seven Networks, Inc.,* No. 2:03–cv–333, 2006 WL 5153146, *1 (E.D.Tex. Mar. 27, 2007) (striking portions of expert report relying on prior art not disclosed in invalidity contentions). The scope of infringement contentions and expert reports are not, however, coextensive. Infringement contentions need not disclose "specific evidence nor do they require a plaintiff to prove its infringement case," *EON Corp. IP Holdings, LLC v. Sensus USA Inc.,* No. 6:09–cv–116, 2010 WL 346218, *2 (E.D.Tex. Jan. 21, 2010), whereas expert reports must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them. FED. R. CIV. P. 26(a)(2)(B).

## ANALYSIS

 Here, Defendants argue that Mr. Huntington's report improperly ex-pands ROY–G–BIV's infringement theories and implicates products not previously identified. Defendants contend that for the first time, Mr. Huntington's report discloses that providing set points corresponds to motion control operations, including non-primitive operations—a position not set forth in ROY–G–BIV's infringement contentions. Docket No. 365 at 9–11. Further, Defendants argue that the expert report asserts for the first time that manual operation of devices can meet certain asserted claim limitation. *Id.* at 11–12. Also, by including ABB's Quality Control Solutions ("QCS") and additional products other than ABB's System 800xA and Compact HMI 800 in his analysis, ABB contends that Mr. Huntington's report inappropriately expands ROY–G–BIV's infringement contentions to accuse products ABB had no previous notice of. *Id.* at 6–9.

ROY–G–BIV counters that it is not accusing any new products or advancing any new theories through Mr. Huntington's expert report. Docket No. 381 at 1. ROY–G–BIV asserts that ABB products such as QCS and systems other than System 800xA or Compact HMI 800 appear in Mr. Huntington's report only in relation to allegedly infringing System 800xA installations that have integrated those other systems. Docket No. 381 at 6. No system other than 800xA or Compact HMI 800 is accused or discussed as a standalone installation, according to ROY–G–BIV. *Id.* In support of this, ROY–G–BIV cites Mr. Huntington's claim charts, which rely solely on System 800xA and related hardware, as accused in ROY–G–BIV's infringement contentions. *Id.* Regarding set points, ROY–G–BIV contends that while the words "set points" are not in its infringement contentions, the concept is clearly included. *Id.* at 12. Similarly, ROY–G–BIV argues, manual operations are de-

scribed in its infringement contentions, even if not explicitly named. *Id.* at 13. Because there are no new infringement theories or products implicated, ROY–G–BIV advocates that Mr. Huntington's report is proper and admissible.

Mr. Huntington's report does not improperly extend the bounds of ROY–G–BIV's infringement contentions. System 800xA is a complex industrial system and every individual installation varies significantly. Docket No. 381 at 3. While Mr. Huntington mentions other ABB systems, such as QCS, the accused systems remain System 800xA and Compact HMI 800. ABB has provided no evidence that Mr. Huntington accuses any ABB system unless it is integrated with System 800xA. Further, the infringement theories posited by Mr. Huntington have support in ROY–G–BIV's infringement contentions. While the infringement contentions may not use the exact words Mr. Huntington does, ROY–G–BIV has sufficiently demonstrated that its infringement contentions provided adequate notice of the infringement theories Mr. Huntington's report posits. Most of ABB's arguments appear to implicate the merits of ROY–G–BIV's infringement theories rather than the scope or ROY–G–BIV's infringement contentions, and are therefore better handled at trial than through a motion to strike. Accordingly, Defendants' Motion to Strike is **DENIED**.

### CONCLUSION

As stated at the hearing, and for the reasons stated herein, ROY–G–BIV's Motion for Partial Summary Judgment of No Inequitable Conduct (Docket No. 362) is **GRANTED IN PART** and **DENIED IN PART AS MOOT**; ROY–G–BIV's Motion for Partial Summary Judgment Regarding ABB's OPC–Related Affirmative Defenses and Counterclaims (Docket No. 366) is **GRANTED**; Defendants' Motion to Dis-

miss Their OPC–Related Affirmative Defenses and Counterclaims (Docket No. 425) is **DENIED AS MOOT**; Defendants' Motion for Summary Judgment of Invalidity due to Lack of Written Description (Docket No. 363) is **DENIED**; ROY–G–BIV's Motion to Exclude the Expert Testimony of Arthur Zatarain (Docket No. 361) is **DENIED**; and Defendants' Motion to Strike Portions of George Huntington's Expert Report (Docket No. 365) is **DENIED**.

**So ORDERED**