**ADVANCED CARDIOVASCULAR SYSTEMS, INC., a California corporation, Plaintiff,**

v.

**SCIMED LIFE SYSTEMS, a Minnesota corporation, Defendant.**

**No. C 6–00946 CW.**

United States District Court, N.D. California.

April 25, 2000.

---

Richard H. Abramson, Heller Ehrman White & McAuliffe, Palo Alto, CA, Timothy J. Malloy, Gregory J. Vogler, Edward A. Mas, II, David D. Headrick, James M.

Hafertepe, Leland G. Hansen, Stephen H. Bean, Alejandro Menchaca, Sandra A. Frantzen, McAndrews Held & Malloy, Chicago, IL, for Advanced Cardiovascular Systems, Inc., a California corporation, plaintiff.

Philip S. Johnson, Steven B. Samuels, Barbara L. Mullin, Kevin M. Flannery, Henrik D. Parker, Woodcock Washburn Kurtz Mackiewicz & Norris, Philadelphia, PN, David Eiseman, Quinn Emanuel Urquhart Oliver & Hedges LLP, Palo Alto, CA, David R. Bailey, Woodcock Washburn Kurtz Mackiewicz & Norris LLP, Philadelphia, PA, Robert C. Heim, Dechert· Price & Rhoads, Philadelphia, PA, for SciMed Life Systems, a Minnesota corporation, defendant.

Philip S. Johnson, Woodcock Washburn Kurtz Mackiewicz & Norris, Philadelphia, PN, David Eiseman, Quinn Emanuel Urquhart Oliver & Hedges LLP, Palo Alto, CA, for SciMed Life Systems, counterclaimant.

Richard H. Abramson, Heller Ehrman White & McAuliffe, Palo Alto, CA, Timothy J. Malloy, Gregory J. Vogler, Edward A. Mas, II, David D. Headrick, James M. Hafertepe, Leland G. Hansen, McAndrews Held & Malloy, Chicago, IL, for Advanced Cardiovascular Systems, Inc., mapcounterdefendant.

## ORDER GRANTING ACS' MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S JUNE 22, 1999 ORDER

WILKEN, District Judge.

Plaintiff Advanced Cardiovascular Systems, Inc. (ACS) moves for partial reconsideration of the Court's June 22, 1999 Order denying ACS's motion for summary judgment with respect to the inequitable conduct and indefiniteness defenses raised by Defendant SciMed Life Systems (SciMed). SciMed opposes the motion. Having considered all if·the papers filed by the parties, the Court grants the motion.

### BACKGROUND

This case involved a patent infringement suit brought by ACS against SciMed in regard to a patent for balloon dilatation catheters. ACS and SciMed both develop, manufacture, promote, and sell catheters used to perform intravascular procedures. ACS owns U.S.Patent No. 5,496,275 (the Sirhan '275 patent), which relates to a balloon dilatation catheter used to perform percutaneous transluminal coronary angioplasty (PTCA) in patients suffering from coronary disease arising from atherosclerosis [1] in the coronary arteries. ACS alleges that SciMed's Bandit catheter infringes the Sirhan '275 patent.

On December 24, 1998, the Court issued its order construing the terms of the Sirhan '275 patent. In the course of construing claim one of the patent, the Court concluded that the terms "distal section" and "substantially larger" were sufficiently definite under 35 U.S.C. § 112, ¶ 2 to allow the Court to construe them. With respect to the term "distal section," the Court stated,

> The Court finds that the meaning of the term "distal section" in the Sirhan '275 patent is sufficiently clear to enable a person skilled in the art to identify the distal portion of ACS' balloon dilatation catheter. First, the preferred embodiment gives not only an estimate of the length of this section, but also indicates that the distal section is situated immediately adjacent to the balloon. This is evident from the description that the distal section is the only part of the catheter, other than the balloon, to enter the patient's coronary

1. Atherosclerosis is a condition wherein the cells lining the arteries are damaged by, for example, smoking or high blood pressure. As a result of this cellular damage, plaque develops at the site of the damage. A deposit of plaque is called a stenosis or a lesion. These lesions block, and may eventually shut off entirely, blood flow in the arteries.

anatomy. Figure one in the specification, depicting the reduced-profile distal section adjacent to the balloon, confirms this interpretation. Hansen Dec.Ex. 1. The specification, therefore, teaches that the distal section is between ten and forty centimeters long and is situated contiguous to the balloon.

In addition, although Mr. Corso testified that there was no industry-wide definition of distal section, he also made clear that by reference to a series of factors a person skilled in the art could generally identify the distal section on a given catheter. Mr. Corso stated that a person skilled in the art could identify the distal section by changes in the flexibility and profile of the catheter and the type of procedure for which the catheter was designed. Hansen Dec.Ex. 14 at 3–4. SciMed does not dispute that these criteria are widely known to persons skilled in the art. The Court finds that, when coupled with the description in the specification, these criteria would allow a person skilled in the art to identify with adequate precision the distal section of the Sirhan '275 patent catheter.

December 24, 1998 Order Construing Claims, Granting Defendant's Motion for Leave to Amend its Second Amended Answer, and Denying Defendant's Motion for Summary Judgment (December 24, 1998 Order) at 16–17. With respect to the term "substantially larger," the Court stated,

The Court finds that figure three, interpreted in the context of the specification as a whole, provides a sufficient indication of the breadth of the term "substantially larger" to allow a person skilled in the art to ascertain the scope of the Sirhan '275 patent. Contrary to SciMed's contention that Mr. Sirhan conceded that the figure is not accurate in its proportions, Mr. Sirhan's statement that the drawings were not to scale was made only in reference to figure one, not figure three which depicts the transverse dimensions of the distal section. Parker Dec.Ex. 18 at 28, 30. There is no evidence to suggest that figure three is not drawn to scale. In-

deed, a photograph of the distal section, submitted to the PTO during the application process, confirms the proportions depicted in figure three. Sirhan Reply Dec.Ex. B at 2.

The description of the distal section in the specification provides further context with which to define the extent of the term "substantially larger." The specification clearly states that the purpose of reducing the catheter profile, which results in one transverse dimension substantially larger than the perpendicular dimension, is to increase flexibility substantially. Hansen Dec.Ex. 1 at 3:6–15. Although the specification does not provide an explicit definition, the Federal Circuit has held that terms of art that reasonably describe the claimed subject matter to a person skilled in the art need not be defined. *Andrew Corp.* 847 F.2d at 821 (terms "close to" and "substantially equal" not indefinite in circumstances). The Court finds that figure three, interpreted in the overall context of the specification, provides a person skilled in the art with a reasonable description, sufficient to determine the scope of the Sirhan '275 patent.

*Id.* at 18–19.

The Court also granted SciMed's motion for leave to amend its second amended answer to add a defense of inequitable conduct. The Court rejected ACS' argument that SciMed's proposed amendment would be futile, stating that ACS had failed to demonstrate that there was no set of facts on which SciMed could prevail. The Court noted that SciMed's inequitable conduct defense depended on the contention that the distal section that ACS described as "quite short" in the Sirhan application process was contained in the embodiment portrayed in figure three of the specification of U.S.Patent No. 5,040,548 (the Yock '548 patent) and in the same embodiment depicted in figure three of the specification of U.S.Patent No. 5,769,868 (the Yock '868 patent). During

the Yock '868 patent application process, ACS described the distal section in the latter embodiment as being at least ten centimeters long. ACS argued that it was referring to figure ten, not figure three, when it described the embodiment in the Yock '868 specification as being at least ten centimeters in length. The Court concluded that because both parties' arguments were plausible, it could not hold, as a matter of law, that SciMed's allegation of inequitable conduct was futile.

On June 22, 1999, the Court granted ACS' motion for summary judgment of validity, finding that the Sirhan patent was not anticipated by the Frassica patent, the Coehlo invention, or the Yock '868 patent. With respect to the latter, the Court concluded that claims one, four, six, nine, ten, and eleven of the Sirhan patent are not anticipated by the Yock '868 patent because the oblong-shaped section of the Yock '868 patent is not the distal section within the meaning of the Court's construction of the Sirhan patent. The Court also concluded that the Sirhan patent is not obvious in light of the prior art. Furthermore, it granted ACS' motion for summary judgment that the Bandit catheter infringes the Sirhan patent.

However, the Court denied ACS' motion for summary judgment of enforceability, stating that none of the evidence relied upon by ACS established the actual length of the oblong-shaped section depicted in figures 3A and 3B of the Yock specification, and that SciMed had produced some evidence tending to show that figures 3A and 3B were misrepresented by ACS' counsel, Edward Lynch, during the prosecution of the Sirhan patent. Thus, the Court concluded that SciMed had presented sufficient evidence of both a material misrepresentation and an intent to deceive to preclude granting ACS' motion for summary judgment of enforceability. However, the Court noted that to prevail on its defense, SciMed would have to meet a "heavy burden" of proving by clear and convincing evidence that:

(1) during the prosecution of the Sirhan patent, ACS' counsel referred to figures 3A and 3B of the Yock specification when he described the oblong-shaped section as being quite short; (2) during the prosecution of the Yock '868 patent, ACS' counsel referred to the same figures in the Yock specification when he described the oblong-shaped section as being at least ten centimeters long; (3) the two descriptions of the length of the oblong-shaped section are wholly incompatible; (4) ACS' counsel's description, *during the Sirhan prosecution,* was both false and material to the PTO's decision to award the Sirhan patent; and (5) ACS misrepresented the length of the oblong-shaped section with the intent of misleading the patent examiner.

June 22, 1999 Order Granting ACS' motions for Summary Judgment of Validity and Infringement and Denying ACS' motion for Summary Judgment of Enforceability and SciMed's Motions for Summary Judgment of Invalidity and No Willful Infringement (June 22, 1999 Order) at 24.

The Court also denied SciMed's motion for summary judgment of invalidity and no willful infringement. However, it clarified that SciMed was not precluded from raising indefiniteness as a defense at trial, despite the Court's discussion of indefiniteness in the context of claims construction. The Court explained,

In its Order of December 24, 1998, the Court addressed the issue of indefiniteness as an issue of claims construction only to the extent that it found that the "distal section" and "substantially larger" claim terms of the Sirhan patent were sufficiently definite to allow the Court to construe them. The Order further denied SciMed's implicit request for summary judgment on the issue of invalidity due to indefiniteness. The Order, however, does not constitute an actual adjudication of SciMed's defense of indefiniteness.

*Id.* at 38.

On March 2, 2000, ACS moved for leave to file a motion for reconsideration of the Court's June 22, 2999 Order denying

ACS's motion for summary judgment with respect to SciMed's inequitable conduct and indefiniteness defenses. ACS argued that, pursuant to Federal Circuit precedent, indefiniteness should have been decided during the claim construction stage of the litigation. In addition, it argued that substantial new evidence obtained during discovery conducted after the June 22, 1999 Order demonstrated that SciMed's indefiniteness and inequitable conduct defenses fail as a matter of law. The Court granted ACS' motion for leave in light of the new evidence it presented. The instant motion for partial reconsideration followed.

## DISCUSSION

### I. Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1288–89 (9th Cir.1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Eisenberg*, 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Accident and Indem. Co.*, 952 F.2d 1551, 1556 (9th Cir.1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim. *See id.; Lujan v. National Wildlife Federation*, 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan*, 929 F.2d at 1409.

### II. Inequitable Conduct

A party seeking to demonstrate inequitable conduct must: 1) establish by clear and convincing evidence that the applicant made a material misrepresentation to the PTO or omitted material information; and 2) establish a threshold level of intent on the part of the applicant. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed.Cir.1995); *Akzo N.V. v. U.S. Int'l. Trade Comm'n*, 808 F.2d 1471, 1481 (Fed.Cir.1986). In determining whether a misrepresentation or omission is material, the standard is whether a "reasonable [patent] examiner" would find the reference to be important in deciding whether or not to issue a patent. *See Molins*, 48 F.3d at 1179. Intent to deceive the patent examiner need not be proven by direct evidence, but rather may be inferred from the circumstances surrounding the applicant's conduct. *See id.* at 1180–81.

As noted above, the Court previously held that, to prevail on its equitable conduct defense, SciMed must show by clear and convincing evidence that: (1) during the prosecution of the Sirhan patent, ACS' counsel, Mr. Lynch, referred to figures 3A and 3B of the Yock specification when he described the oblong-shaped section as being quite short; (2) during the prosecution of the Yock '868 patent, Mr. Lynch referred to the same figures in the Yock specification when he described the oblong-shaped section as being at least ten centimeters long; (3) the two descriptions of the length of the oblong-shaped section are wholly incompatible; (4) Mr. Lynch's description, *during the Sirhan prosecution,* was both false and material to the PTO's decision to award the Sirhan patent; and (5) ACS misrepresented the length of the oblong-shaped section with the intent of misleading the patent examiner. Since the Court issued this ruling, SciMed has asserted a second theory of inequitable conduct. In addition to its first theory, it now alleges that the Yock specification[2] expressly discloses a catheter having an oblong-shaped section that is at least ten centimeters long. Thus, SciMed argues, ACS committed inequitable conduct when it distinguished the Yock '548 patent from the Sirhan claims on the ground that Yock does not disclose catheters having an oblong-shaped section that is at least ten centimeters long. The Court considers each of SciMed's theories in turn.

### A. ACS' Representations During the '868 York Prosecution

As initially articulated, SciMed's inequitable conduct defense was premised on the contention that ACS portrayed the same embodiment in the Yock specification in contradictory ways during the Sirhan '275 patent application process and the Yock '868 patent application process. Specifically, SciMed argued that the distal section that Mr. Lynch described as "quite short" during the Sirhan '275 patent application process, in order to distinguish the Yock '548 patent, he later described during

the Yock '868 patent application process as at least ten centimeters long.

ACS does not dispute that Mr. Lynch was referring to figures 3A and 3B of the Yock specification when he described the oblong-shaped section as being quite short. Thus, there is no genuine factual dispute as to this issue. However, ACS does contest SciMed's assertion that during the prosecution of the Yock '868 patent, Mr. Lynch referred to figures 3A and 3B in the Yock specification when he described the oblong-shaped section as being at least ten centimeters long.

SciMed argues that because the catheters disclosed in figures ten through thirteen of the Yock '868 patent are not balloon dilatation catheters, the "inescapable conclusion" is that Mr. Lynch argued that the support for the claims to balloon dilatation catheters having a ten centimeter oblong section came from the balloon dilatation catheter embodiments in figures 3A and 3B. SciMed also relies on a proposed amendment during the Yock '868 prosecution in which Mr. Lynch cited elements of figures 3A and 3B in support of the patentability of claims twenty-five and twenty-nine.

ACS responds that the logic underlying SciMed's first argument can be used to reach the opposite conclusion: that Mr. Lynch must have been relying on figures ten and thirteen because figures 3A and 3B do not contain a ten millimeter oblong section. In fact, ACS argues, it disclaimed the Yock '868 claims containing the elements depicted in figures 3A and 3B and a ten centimeter oblong section as not supported by the specification. ACS also notes that the proposed amendment upon which SciMed relies, in which Mr. Lynch cited elements of figures 3A and 3B in support of pending claims twenty-five and twenty-nine, was never signed. Rather, ACS contends, Mr. Lynch canceled both claims in the actual signed amendment. Thus, ACS argues, SciMed cannot cite a single instance in which Mr. Lynch relied

---

**2.** The specification is the same in both Yock patents.

on figures 3A and 3B during the Yock '868 prosecution.

■ These arguments are no different than those previously raised by the parties. However, ACS also raises the new argument that, even assuming it represented the same embodiment in the Yock specification in contradictory ways during the Sirhan '275 patent application process and the Yock '868 patent application process, and that ACS' statements during the Sirhan prosecution were false, SciMed cannot show that these statements were material to the patent examiner's decision to award the Sirhan patent. The Court agrees.

SciMed's only assertion of materiality with respect to its inequitable conduct argument is that the Sirhan claims could not have issued if Mr. Lynch had not distinguished Yock on the basis of the length of the oblong-shaped section. *See* SciMed's opposition at 2:15–17, 13:7–11. As SciMed's expert, Dr. Drasler, explains,

> [F]rom the period beginning in December 1992, ACS persistently argued to the PTO in Sirhan that Yock discloses a wrapped oblong section that is only 'quite short' in response to the Examiner's rejection of the Sirhan claims having the 10 cm length limitation over Yock. I expect to testify that one of ordinary skill in the art would have found these arguments to be of significant importance to the prosecution of the Sirhan application and that at least the independent claims being rejected over Yock could not have issued if ACS had not persistently argued that Yock discloses a wrapped oblong section that is only short.

Flannery Dec., Ex. 1 ¶ 36. This argument is contrary to the Court's finding that the Sirhan '275 patent is valid over the Yock disclosure, regardless of the length of the oblong-shaped section.

As stated above, the Court previously granted ACS' motion for summary judgment that claims one, four, six, nine, ten, and eleven of the Sirhan patent are not anticipated by the Yock '868 patent. *See* June 22, 1999 Order at 13–18. The Court reasoned that, although there was a dispute of fact as to the length of the oblong-shaped section depicted in figures 3A and 3B of the Yock specification,[3] summary judgment of no anticipation was warranted because the oblong-shaped section depicted in figures 3A and 3B of the Yock specification is not the distal section within the meaning of the Sirhan patent. It necessarily follows from this conclusion that the Sirhan patent could have issued over Yock, even if Mr. Lynch had not distinguished Yock on the basis of the length of the oblong-shaped section. Therefore, SciMed's materiality argument is unavailing.

■ SciMed's first inequitable conduct theory also fails because SciMed cannot show that Mr. Lynch's description, during the Sirhan prosecution, of the oblong-shaped section depicted in figures 3A and 3B of the Yock specification was false. As the Court previously made clear, it is insufficient for SciMed to show only that ACS portrayed the same embodiment in the Yock specification in contradictory ways during the Sirhan '275 patent application process and the Yock '568 patent application process. Rather, to prevail on its inequitable conduct defense, it must also show that Mr. Lynch's description, *during the Sirhan prosecution,* was false. *See* June 22, 1999 Order at 24. SciMed no longer contests that figures 3A and 3B depict an oblong-shaped section that extends for a "few millimeters," i.e. is "quite

---

3. SciMed argued that claims eight and nine of the Sirhan patent were anticipated by the Yock '868 patent because figures 3A and 3B of the Yock specification depicted an oblong-shaped section at least ten centimeters in length. Conversely, ACS argued that claims eight and nine of the Sirhan patent were not anticipated because the oblong-shaped section of the embodiment depicted in figures 3A and 3B was approximately one tenth of a centimeter long. Given the record evidence at that time, the Court was unable to determine the length of the oblong-shaped section depicted in figures 3A and 3B.

short." Thus, SciMed cannot assert that Mr. Lynch's statements to this effect during the Sirhan prosecution were literally false. Instead, SciMed argues that Mr. Lynch's statements were misleading in that they suggested that the oblong-shaped section was *only* short when, in fact, figures 3A and 3B, considered along with the last sentence of the Yock specification, expressly disclose a catheter having an oblong-shaped section that is at least ten centimeters long. As discussed below, SciMed's contention that the Yock specification expressly discloses an oblong-shaped section at least ten centimeters in length is unavailing. Thus, SciMed cannot show that Mr. Lynch's statements, during the Sirhan prosecution, with regard to the length of the oblong-shaped section depicted in figures 3A and 3B, were false.

Because SciMed cannot show that Mr. Lynch's statements, during the Sirhan prosecution, with regard to the length of the oblong-shaped section depicted in figures 3A and 3B, were false or material to the patent examiner's decision to award the Sirhan patent, the Court concludes that ACS is entitled to summary adjudication of SciMed's claim that ACS committed inequitable conduct when it portrayed the same embodiment in the Yock specification in contradictory ways during the Sirhan '275 patent application process and the Yock '868 patent application process.

### B. The Yock Specification

█ As just discussed, SciMed does not contest that figures 3A and 3B depict an oblong-shaped section that extends for a "few millimeters," i.e. is "quite short." However, relying on the report of Dr. Drasler, it argues that figures 3A and 3B, when considered in conjunction with the last sentence of the Yock specification, disclose an oblong section that extends for at least ten centimeters. Thus, SciMed argues, ACS committed inequitable conduct when it distinguished the Yock '548 patent from the Sirhan claims on the ground that Yock does not disclose catheters having an oblong-shaped section that is at least ten centimeters long.

The last sentence of the Yock specification states as follows:

> Although the present invention has been described principally in conjunction with catheters having coaxial lumens, it should be appreciated that the invention is as applicable, if not more applicable, to catheters having side-by-side lumens.

Hansen Dec., Ex. 4 at 10:35–40. Dr. Drasler explains that

> because Yock describes balloon dilatation catheters having coaxial lumens (Figs.2–9) and other catheters (not balloon catheters) having side-by-side lumens (Figs.10–13), the logical meaning of this paragraph is a disclosure of a balloon catheter embodiment having side-by-side lumens extending throughout the rapid exchange section. Thus, this is a disclosure that the side-by-side arrangement of the tubes of the balloon catheter disclosed in Figs. 2–4 can be extended up to the balloon by extending the inflation tube up to the balloon and maintaining the wrapped side-by-side arrangement of the guidewire and inflation tubes. As such, the disclosed catheter has a wrapped oblong section having a length of at least about 10 cm.

Flannery Dec., Ex. 1 at 6.

ACS first notes that Mr. Lynch voluntarily disclosed the Yock '548 patent to the patent examiner. Thus, Mr. Lynch did not withhold the last sentence of the Yock specification from him. Nor, ACS argues, did Mr. Lynch misrepresent the last sentence to the patent examiner because there was no discussion of that sentence at any time during the prosecution of the Sirhan patent. ACS further argues that Mr. Lynch did not omit any material information with respect to the last sentence of the Yock specification because that specification does not disclose, either expressly or inherently, an oblong-shaped section having a length of at least ten centimeters. In this vein, ACS argues that it is insufficient for a finding of express disclosure that the invention might be modified in the manner suggested by SciMed. Finally,

ACS contends that, in light of the fact that it took Dr. Drasler until two months ago to appreciate the claimed import of the last sentence of the Yock specification, SciMed cannot show that Mr. Lynch understood what that sentence allegedly disclosed and intentionally withheld such information during the Sirhan prosecution.

The Court agrees with ACS that SciMed has not raised a genuine issue of material fact with respect to whether the Yock specification expressly discloses an oblong-shaped section of at least ten centimeters in length. Subject matter is not expressly disclosed unless all of the limitations appear in the specification. *See Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1571–72 (Fed.Cir.1997). It is not sufficient that "a claimed invention is an obvious variant of that which is disclosed in the specification." *Id.* at 1572. The last sentence of the Yock specification states, in relevant part, that "the invention is as applicable, if not more applicable, to catheters having side-by-side lumens." Dr. Drasler states that this phrase indicates that the oblong section of the balloon dilatation catheters disclosed by the Yock patents "can extend for a length of at least ten centimeters." Flannery Dec., Ex. 1 at 4. However, the phrase does not, by its express terms, disclose that the oblong section should be so extended. To the contrary, it merely discloses a catheter with side-by-side lumens, which, as Dr. Drasler concedes, may have an oblong-shaped section as short as that depicted in figures 3A and 3B. *See* Hansen Dec., Ex. 14 at 233:11–19 (last sentence in the Yock specification discloses embodiments having an oblong-shaped section between three millimeters and thirty-seven centimeters). Thus, even assuming that the phrase discloses that some extension of the oblong section is appropriate, it does not disclose

that the lower limit of any such extension is ten centimeters.

SciMed nevertheless contends that the fact that the Yock '868 patent issued with some claims for a balloon dilatation catheter having an oblong-shaped section of at least ten centimeters demonstrates that Yock discloses such a catheter embodiment. However, Dr. Yock statutorily disclaimed those claims because he believed that they were not enabled by the Yock specification. *See* Yock Dec. ¶ 28. While SciMed argues that ACS' "litigation-induced" disclaimer should be disregarded, the Court declines to do so. As discussed above, SciMed is unable to show that the disclaimed claims were in fact enabled by the Yock specification.[4] Thus, whatever the motive for Dr. Yock's statutory disclaimer, it appears that it was proper and that Mr. Lynch accurately represented during the '275 Sirhan patent application process that the oblong-shaped section of figures 3A and 3B of the Yock specification was quite short as compared to the oblong section of the Sirhan invention. Thus, the Court concludes that, while the representations as to the length of the oblong-shaped section of the disclaimed claims during the Yock '868 patent prosecution may be relevant to show inequitable conduct with respect to that patent, they do not demonstrate the falsity of Mr. Lynch's description of the length of the oblong-shaped section disclosed by the Yock specification during the Sirhan '275 patent prosecution.

In sum, because the Yock specification does not disclose that any extension of the oblong-shaped section is appropriate, or that an extended oblong-shaped section must have a length of at least ten centimeters, the Court concludes that SciMed cannot show that Mr. Lynch committed inequitable conduct when he distinguished the

---

4. Implicit in SciMed's argument, that figures 3A and 3B, when considered in conjunction with the written disclosure, disclose a catheter having an oblong-shaped section that is at least ten centimeters long, is the contention that Yock enables one skilled in the art to make the invention claimed in the Sirhan patent. Because the Court rejects SciMed's argument that Yock expressly discloses an oblong-shaped section at least ten centimeters in length, it necessarily rejects SciMed's enablement argument.

Yock '548 patent from the Sirhan claims on the ground that Yock does not disclose catheters having an oblong-shaped section that is at least ten centimeters long.

Furthermore, the Court concludes that, even if SciMed could show that the Yock specification expressly discloses an oblong-shaped section of at least ten centimeters in length, SciMed has failed to adduce sufficient evidence. that Mr. Lynch was aware of this fact and withheld information concerning the disclosure with an intent to deceive the patent examiner. SciMed's expert, Dr. Drasler, did not conclude that the last sentence in the Yock specification expressly discloses an oblong-shaped section that is at least ten centimeters in length until well into this litigation, after SciMed's attorneys brought the sentence to his attention. *See* Hansen Dec., Ex. 14 at 159:25–160:6 (February 10, 2000 testimony of Dr. Drasler that he first began to focus on the last sentence of the Yock specification six weeks earlier, when SciMed's attorneys asked him what he thought it meant). Thus, the Court concludes that the claimed import of that sentence was not readily apparent, even to the trained reader. Under these circumstances, the Court concludes that the mere fact that Mr. Lynch said he understood and believed the arguments he made to the patent examiner with regard to the Yock '868 patent is insufficient to demonstrate that he was aware of the alleged significance of the last sentence of the Yock specification and withheld this information with the intent to deceive the examiner.

Finally, the Court concludes that SciMed has not adduced sufficient evidence of materiality to avoid summary judgment. As discussed above, SciMed's only assertion of materiality with respect to its inequitable conduct argument is that the Sirhan claims could not have issued if Mr. Lynch had not distinguished Yock on the basis of the length of the oblong-shaped section. However, the Court previously found that the Sirhan '275 patent is valid over the Yock disclosure, regardless of the length of the oblong-shaped section. This conclusion belies SciMed's assertion

that the Sirhan patent could not have issued if Mr. Lynch had not distinguished Yock on the basis of the length of the oblong-shaped section. Thus, the Court concludes that SciMed cannot show that Mr. Lynch's failure to disclose the alleged significance of the last sentence of the Yock specification, even assuming SciMed is correct about the significance of that sentence, was material.

For the foregoing reasons, ACS is entitled to summary judgment that it did not engage in inequitable conduct when it distinguished the claims of the Sirhan '275 patent on the ground that the oblong-shaped section disclosed by the Yock specification was "quite short."

### C. Other Alleged Misrepresentations

SciMed finally argues that Mr. Lynch misrepresented the pushability and flexibility of the Yock catheters during the Sirhan '275 patent prosecution. SciMed states that, in attempting to distinguish the Sirhan catheters from the Yock catheters, Mr. Lynch argued,

> Yock provides no improved pushability with little or no loss of flexibility in the distal portion of the catheter which extends out of the guiding catheter into the patient's coronary arteries which is a characteristic of the present invention.

Flannery Dec., Ex. 21 at SCD105234. SciMed contends that Mr. Lynch made contradictory representations during prosecution of the '868 Yock patent, when he argued,

> The key features of the claimed [Yock 868] invention is [sic] providing a distal section on a catheter with an oblong shaped transverse cross-section. This catheter structure has advantages which are not found in the inventions claimed in the '273 patent. The long transverse dimension of the oblong shape maintains pushability in the distal shaft section and the short transverse dimension provides for flexibility. Both characteristics are needed when the distal shaft

section passes through tortuous coronary anatomy.

*Id.*, Ex. 6 at SCD342026.

SciMed's argument is unavailing. The Sirhan patent includes a distal section that is "contiguous to the balloon." December 24, 1998 Order at 16. In this distal section, a portion of the outer tube is secured to a portion of the inner tube, thus providing greater flexibility and pushability. *See* Hansen Dec., Ex. 1 at 3:6–21. By contrast, in the Yock '548 patent, the oblong-shaped transition section "should be positioned at least approximately 10–15 centimeters from the distal extremity of the balloon dilatation catheter" and "remains in the guiding catheter and out of the coronary artery." Hansen Dec., Ex. 3 at 3:17–23. In the portion of the catheter that extends out of the guide catheter and into the coronary arteries, the outer tube is not secured to the inner tube. *See id.*, Ex. 12 at 195:5–7; Ex. 14 at 53:10–19; Ex. 40 at 9. Because the secured arrangement of the tubes is what results in increased flexibility and pushability, *see id.*, Ex. 1 at 3:6–21, Mr. Lynch accurately represented during the Sirhan '275 prosecution that Sirhan was distinguishable from Yock because Yock does not provide enhanced pushability and flexibility in the distal portion of the catheter that extends out of the guiding catheter into the patient's coronary arteries.[5]

ACS argues that Mr. Lynch's statement regarding flexibility and pushability during the Yock '868 prosecution was made in reference to figures ten through thirteen. As Mr. Corso explains,

> Mr. Lynch's discussion relates to the fact that an oblong shaft will be more flexible about its smaller dimension and stiffer about its larger dimension. Thus, the larger dimension can provide pusha-

bility while the smaller dimension provides flexibility, particularly as the catheter "self-orients" in a tortuous path. This phenomenon would be characteristic of the oblong shaft in the embodiments depicted in Yock Figures 10–13. On the other hand, in Yock Figures 2A–4B, the catheter shaft distal of the transition region is circular and would not exhibit this characteristic. The Overlap Section in Figure 3A is too short to meaningfully contribute to such a phenomenon.

Hansen Dec., Ex. 40 at 13.

Again, SciMed points to no evidence to contradict ACS' claim that Mr. Lynch's arguments during the Yock '868 prosecution were limited to the embodiments depicted in figures ten through thirteen, other than the conclusory assertion that ACS must have been referring to the embodiments in figures 3A and 3B. This is insufficient to create a material factual dispute as to whether Mr. Lynch made contradictory representations concerning flexibility and pushability during the Sirhan '275 patent prosecution and the Yock '868 patent prosecution.

SciMed also fails to create a disputed issue of material fact with respect to whether ACS' alleged misrepresentation concerning flexibility and pushability during the Sirhan '275 patent prosecution was material. As described above, SciMed's only assertion of materiality is that the Sirhan claims could not have issued if Mr. Lynch had not distinguished Yock on the basis of the length of the oblong section. Thus, SciMed makes no materiality argument with respect to its claim that Mr. Lynch made contradictory representations concerning the pushability and flexibility of the Yock catheters during the Si-

---

5. SciMed contends that because claim thirty-four of the Sirhan '275 patent was pending at the time of Mr. Lynch's first statement regarding pushability and flexibility, and claim thirty-four does not appear to require an outer tube secured to a portion of an inner tube, Mr. Lynch's statement was necessarily inaccurate. SciMed relies solely on Mr. Corso's

testimony that claim thirty-four does not appear to require an outer tube secured to a portion of an inner tube. This equivocal testimony is insufficient to sustain SciMed's heavy burden of persuasion, especially in light of the fact that it contradicts the language of the Sirhan specification. *See* Hansen Dec., Ex. 1 at 3:6–21.

rhan '275 patent prosecution and the Yock '868 patent prosecution. For this reason, and because SciMed has adduced insufficient evidence that Mr. Lynch's statements regarding flexibility and pushability were in fact contradictory, summary judgment is warranted on SciMed's claim that ACS committed inequitable conduct when it made these statements.

III. Indefiniteness

▬ A patent claim is sufficiently definite if "those skilled in the art would understand what is claimed when the claim is read in light of the specifications." *Morton Int'l, Inc. v. Cardinal Chem. Co.,* 5 F.3d 1464, 1470 (Fed.Cir.1993); *Amgen, Inc., v. Chugai Pharmaceutical Co., Ltd.,* 927 F.2d 1200, 1217 (Fed.Cir.1991); *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 624 (Fed.Cir.1985). "Claims must 'reasonably apprise those skilled in the art' as to their scope and be 'as precise as the subject matter permits.' " *Amgen,* 927 F.2d at 1217 (quoting *Shatterproof Glass,* 758 F.2d at 624); *see also Miles Labs., Inc. v. Shandon Inc.,* 997 F.2d 870, 875 (Fed.Cir.1993) ("The degree of precision necessary for adequate claims is a function of the nature of the subject matter."). "Mathematical precision should not be imposed for its own sake; a patentee has the right to claim the invention in terms that would be understood by persons of skill in the field of the invention." *Modine Mfg. Co. v. United States Int'l Trade Comm'n,* 75 F.3d 1545, 1557 (Fed. Cir.1996). A party claiming indefiniteness as a defense must demonstrate indefiniteness by clear and convincing evidence. *See Al–Site Corp. v. VSI Int'l, Inc.,* 174 F.3d 1308, 1323 (Fed.Cir.1999) (citing 35 U.S.C. § 282) ("Issued patents have a strong presumption of validity in infringement proceedings. Hence, an accused infringer who defends on grounds of patent invalidity bears the burden of showing patent invalidity by clear and convincing evidence.").

▬ ACS first argues that the Court violated Federal Circuit precedent in failing to resolve the issue of indefiniteness as a matter of law during claim construction proceedings. The Federal Circuit has stated that indefiniteness is decided as a matter of law by the court in its role as construer of claims. *See Atmel Corp. v. Information Storage Devices, Inc.,* 198 F.3d 1374, 1378 (Fed.Cir.1999) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims."); *Process Control Corp. v. Hydreclaim Corp.,* 190 F.3d 1350, 1358 n. 2 (Fed.Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1531, 146 L.Ed.2d 346 (2000) ("The definiteness requirement of 35 U.S.C. § 112, ¶ 2 is a legal requirement, based on the court's role as construer of patent claims, that is reviewed de novo."); *Personalized Media Communications, LLC v. International Trade Comm'n,* 161 F.3d 696, 702 (Fed.Cir.1998) ("Whether certain claim language invokes 35 U.S.C. § 112, ¶ 6 is an exercise in claim construction and is therefore a question of law, reviewable de novo by this court. Likewise, whether a claim is indefinite under 35 U.S.C. § 112, ¶ 2 is also a question of law, reviewable *de novo* by this court."). It is not entirely clear from these cases whether indefiniteness should be decided on summary judgment as a pure question of law, as in claim construction, or whether material factual disputes concerning indefiniteness are to be decided by the jury. *But see Exxon Research & Engineering Co. v. United States,* 46 Fed.Cl. 278, 279– 80 (2000) (indefiniteness, like claim construction, is decided on summary judgment by the court even if there are underlying factual disputes). However, even if indefiniteness involves questions of fact, summary judgment is warranted here because SciMed has not shown that there are material factual disputes with respect to its indefiniteness defense.

A. "Distal Section"

▬ As described above, in the course of construing claim one of the Sirhan patent, the Court found that the term "distal section," when read in light of the specifi-

cation, was sufficiently clear to enable a person skilled in the art to identify the distal section of ACS' balloon dilatation catheter. The Court noted that the specification teaches that the distal section is between ten and forty centimeters long and is contiguous to the balloon. Furthermore, the Court stated, certain criteria known to persons skilled in the art, such as the flexibility and profile of the catheter and the type of procedure for which the catheter was designed, would, when coupled with the description in the specification, allow a person skilled in the art to identify with adequate precision the distal section of the Sirhan '275 patent catheter. In reaching these conclusions, the Court rejected SciMed's arguments that the term "distal section" was fatally indefinite because the specification stated only that the distal section is preferably between ten and forty centimeters in length and ACS' expert conceded that there was no clearcut definition in the industry for distal.

SciMed raises no new arguments in opposition to ACS' motion for reconsideration. Rather, it continues to rely on the testimony of ACS' expert, Mr. Corso, that there is no industry-wide definition for distal, and that different factors might be considered in determining where the distal section begins in a catheter, including the type of procedure for which the catheter is designed, the change in flexibility along the catheter shaft, and the patient upon whom the catheter is being used. *See* Flannery Dec., Ex. 17 at 32:6–7, 45:17–23, 474:20–475:10. As the Court previously concluded, this testimony does not demonstrate that the term "distal section" is indefinite.

The specification of the Sirhan '275 patent states that in the preferred embodiment, the distal section is between ten and forty centimeters long and is situated contiguous to the balloon. *See* Hansen Dec., Ex. 1 at 7:62–67. In addition, it identifies the distal section as that section that enters the patient's coronary anatomy during intravascular procedures and that has decreased dimensions and improved flexibility. *See id.* at 2:29–39, 3:6–21, 7:64–67.

Mr. Corso states that the term "distal" is "among the most common terms of reference in the art of intravascular catheters." *Id.,* Ex. 31 at 2. This conclusion is supported by SciMed's use of the term "distal shaft" in its product literature, *see id.,* Ex. 30, and the repeated use of the term "distal section" in the opinion letter SciMed obtained from outside counsel. *See id.,* Ex. 32.

The fact that "distal section" is not defined more precisely is insufficient to overcome these factors. Mr. Corso and Dr. Drasler testified that the portion of the catheter that is designed to extend into the coronary arteries of a patient varies by procedure. *See id.,* Ex. 14 at 178:11–19 (the portion of the catheter that is inserted in the coronary artery ranges from ten to fifteen centimeters); *id.,* Ex. 31 at 4 (the catheter is designed to extend approximately ten centimeters into the patient's coronary arteries, and from twenty to twenty-five centimeters in more extreme circumstances). Likewise, the arched portion of the guide catheter, through which the distal section must also extend, varies in length. *See id.,* Ex. 3 at 3–4 ("In PTCA catheters ... the distal section is the portion of the catheter that navigates through the curved portion of the guide catheter (around the aortic arch) and into and through the coronary arteries.... [T]he catheter should be designed with a portion that can readily flex about the arched portion of the guide catheter, which may typically be about 10–15 cm long."). Thus, the patent specification's description that the distal section is between ten and forty centimeters long is as precise as the subject matter permits. The Court concludes that this estimate, when considered in conjunction with the other criteria used to identify the distal section, including its location immediately adjacent to the balloon, its flexibility, and its decreased dimensions, renders the term "distal section" in claim one sufficiently definite that those skilled in the art would understand what is claimed when the claim is read in light of the specification.

### B. "Substantially Larger"

 The mere use of a term like "substantially" to modify a term in a claim does not render a claim indefinite. In *Andrew Corp. v. Gabriel Elec., Inc.*, 847 F.2d 819, 821 (Fed.Cir.1988), the Federal Circuit explained that terms like "approach each other," "close to," "substantially equal," and "closely approximate" are "ubiquitous in patent claims. Such usages, when serving reasonably to describe the claimed subject matter to those of skill in the field of the invention, and to distinguish the claimed subject matter from the prior art, have been accepted in patent examination and upheld by the courts." SciMed argues, however, that the term "substantially larger" is fatally indefinite because it is a comparative term that fails to identify with any precision how much larger the first transverse dimension of the distal section must be. It states that even ACS' definitions of the term have varied, with ACS stating that the term requires a difference of about twenty percent and Mr. Corso stating that the difference would be "on the order of 15 percent or bigger." Flannery Dec., Ex. 17 at 494:25–26.

SciMed's arguments are unavailing. As the Court previously observed, figure three, which depicts a cross-sectional dimension that is about twenty percent larger than a perpendicular cross-sectional dimension, provides an indication of the scope of the term "substantially larger." *See* December 24, 1998 Order at 18; Hansen Dec., Ex. 38 at 20 ("[A]s depicted in Figure 3, the embodiment of Figures 1–5 has a cross-sectional dimension that is approximately 23% larger than a perpendicular cross-sectional dimension."). Figure nine also depicts a cross-sectional dimension that is approximately twenty percent larger than a perpendicular cross-sectional dimension.[6] *See* Hansen Dec., Ex. 28 at 21. In addition, as the Court also previously noted, the specification clearly states that the purpose of reducing the catheter profile, which results in one transverse dimension substantially larger than the perpendicular direction, is to increase flexibility substantially. Thus, the specification makes clear that the difference between the first transverse direction and the perpendicular direction must be such as to result in a substantial increase in flexibility. The Court concludes that this requirement, in connection with figures three and nine, allows a person skilled in the art to ascertain the scope of the Sirhan '275 patent.

Contrary to SciMed's contention, Mr. Corso's testimony, that a cross-sectional dimension would be "substantially larger" if it were "on the order of 15 percent or bigger" than the cross-sectional dimension perpendicular to it, is consistent with figures three and nine. Although neither figure depicts a difference of fifteen percent, Mr. Corso's testimony clearly encompasses the differences depicted in the figures.

Because SciMed has not shown that there are material factual disputes with respect to its indefiniteness defense, the Court grants ACS' motion for reconsideration with respect to that defense.

### CONCLUSION

For the foregoing reasons, ACS' motion for partial reconsideration of the Court's June 22, 1999 Order denying ACS' motion for summary judgment with respect to SciMed's inequitable conduct and indefiniteness defenses is granted. Trial on the issues of willfulness and damages will begin, as scheduled, on May 15, 2000.

---

6. The Federal Circuit has held that "drawings alone may provide a written description of an invention as required by § 112." *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 866 (Fed. Cir.1993) (internal quotation marks omitted).